## MARR VS. HOWLAND and others.

*Equity—Mortgage foreclosure—Estoppel—Stay of proceedings to perfect mortgagor's title.*

1   Mortgage on land, for part of the purchase money, purchased by plaintiff after due, on mortgagor's request and representation that the whole amount was unpaid, and the mortgage a sufficient security therefor, and his promise to pay it in one year thereafter. *Held*, that the mortgagor was estopped from setting up in a foreclosure action any failure of the consideration of the note and mortgage, or any defect in his title to the premises.

2.   The mortgagor having alleged on oath that the deed of the land to him from the mortgagee did not convey a legal title, by reason of a *mistake* in the deed executed to said mortgagee by *his* grantor, and other facts, which he (said mortgagor) had not discovered until after the commencement of this action : *Held*, that, if on discovering such defect in his title, he had immediately commenced suit to perfect his title, and had shown that he was prosecuting the same with all due diligence to judgment, the court might, perhaps, in its discretion, have stayed proceedings in this suit until such title was perfected.

3.   But upon the facts shown in this case, the mortgagor not having taken any steps to perfect his title, the plaintiff's proceedings should not be arrested, nor he be compelled to litigate the question of the defendant's title before foreclosing and selling; and an order of the circuit court for that purpose, is reversed.

APPEAL from the Circuit Court for *Kenosha* County.

Action to foreclose a mortgage, executed in 1857, to Leonard Bennett, to secure a note for $1100, of same date, payable in one year therefrom. The complaint states, *inter alia*, that in February, 1864, the mortgagor, *Howland*, requested plaintiff to purchase said note and mortgage, stating that they were then held and owned by one Hyde, administrator of the estate of one David Hyde, deceased ; that there was then due and unpaid thereon about $1556 ; and that the real estate mortgaged was good, ample and sufficient security therefor ; and plaintiff, relying on said statements, purchased the note and mortgage, &c. The answer of the mortgagor alleges that the note and mortgage were given for the balance of the purchase money of the premises, the same having been sold to him by said Leonard Bennett, as he and said Bennett supposed ; that Bennett had however no legal title to the land, the deed of conveyance executed to him September 10, 1846, by one Betsey Bennett,

who then owned said land, intended to convey the same to him, describing the land conveyed as in the *northeast* quarter of a certain section, whereas the land in suit is in the *northwest* quarter of said section.  The answer further alleges that the agent of Leonard Bennett who negotiated the sale of the land to the defendant, represented said Leonard as an unmarried man, whereas in fact, as defendant has since discovered, he had a wife then living who did not join in the deed to defendant ; that the defendant did not discover the defect in his title until after the commencement of this action ; that the purchase price of the premises was $2400, of which $1300 was paid in cash : that by reason of the defect in the title of said Leonard Bennett and of defendant as his grantee, and by reason of the failure of the wife of said Leonard to join in the deed to defendant, the latter had been and still was unable to sell the land, or to borrow money and give security thereon, so as to pay the note and mortgage held by plaintiff, to the defendant's damage $2000, which is set up as a counter-claim.  The answer further insists that by reason of the premises the consideration of said note and mortgage has wholly failed, and they are void.  Prayer, that an injunctional order be granted, restraining the plaintiff &c. from further prosecuting this action until the title to said land be perfected in the defendant ; and in case title be not so perfected within a reasonable time, that the injunction be made perpetual ; also that the note and mortgage be adjudged void, &c.

There was a reply in denial.  The defendant *Howland* filed an affidavit that he had ascertained since his answer, that the Betsey Bennett therein named, who was unmarried, had been dead for several years, leaving various persons as her heirs, to the affiant unknown.  The plaintiff filed an affidavit of his own, and one by J. J. Pettit, Esq., his attorney, which, in addition to the facts alleged in the complaint, stated that when the defendant applied to the plaintiff to purchase said note and mortgage, he (defendant) promised in that case to pay the

amount in one year thereafter.   The plaintiff's affidavit further states that he " never knew or suspected any defect in the title to said mortgaged land until said defendant filed his answer in this action, and he does not believe there is any defect in the title to said land, nor but that said mortgage is a good, valid and subsisting lien thereon ; for that to affiant's knowledge, said premises have been in the quiet, peaceable and undisturbed possession of said mortgagor, and of his grantors and their agents or tenants, for more than twenty-one years past."

On the pleadings and these affidavits, the court, on defendant's motion, ordered " that the plaintiff amend his proceedings herein, so as to bring in as defendants the heirs of Betsy Bennett, or take other steps to perfect the title to said premises in the defendant M. Howland; that the costs of such proceedings be allowed said plaintiff in his judgment in this action ; and that until such amendment be made or title be perfected as aforesaid, the prosecution of this action be stayed ; and that the defendants recover of plaintiff five dollars, costs of this motion." From this order the plaintiff appealed.

J. J. Pettit, for appellant, argued, among other things, that if the plaintiff had made the unknown heirs of Betsy Bennett original parties in this suit, and had stated in his complaint the supposed cause of action against them as fully as Howland has stated it in his answer, the complaint would have been demurrable under subs. 5 and 6, sec. 5, ch. 125, R. S.   The claim to quiet Howland's title does not arise out of the transaction of giving this note and mortgage, but out of a transaction between Leonard Bennett and Betsey Bennett many years previous; and consequently it could not be united with this foreclosure action under subd. 1, sec. 29, and sec. 30, of ch. 125.   Smith v. Hallock, 8 How. Pr. R., 73 ; Spalding v. Spalding, 3 id., 297 ; 9 id., 113, 311 ; 12 id., 419, 340 ; 10 id., 361 ; 4 Abb., 202 ; 18 Barb., 494 ; Sauer v. Steinbauer, 14 Wis., 74, 75.   All the parties in this action are not interested in the questions raised by Howland's answer.   R. S., ch. 125, sec. 30 ; 11 How. Pr. R.,

242 ; 8 id., 520; 4 Seld., 214. If *Howland* had filed his bill against the heirs of Betsy Bennett, to perfect and quiet the title, *Marr*, as assignee of this note and mortgage, would not have been a proper party to such suit. *Marr's* foreclosure action, and such suit by *Howland* to quiet title, could not be consolidated. R. S. ch. 125, sec 42 ; *Pierce v. Lyon*, 3 Hill, 450 ; *Wilkinson v. Johnson*, 4 Hill, 46, 49 ; *Dunn v. Mason*, 7 Hill, 154. Again, if the substance of *Howland's* answer were in the form of a complaint against the heirs of Betsey Bennett, it would be demurrable, as not stating a cause of action against them, because it does not state any demand of a deed or release from them, or any refusal on their part to execute an instrument that would perfect title in *Howland*. *Dye v. Montague*, 10 Wis., 13–20 ; *Seeley v. Howard*, 13 id., 337 ; 14 id., 460–61. Moreover the answer does not state the material fact, that Betsey Bennet or her heirs set up a claim to the land. *Gamble v. Loop*, 14 Wis., 465–68 ; *Taft v. Kessel*, 16 id., 277. Again, suppose the heirs of Betsey Bennett are made parties by publication and summons, but do not appear, the judgment in this foreclosure suit will not affect any right of theirs in the land, since such right is not subsequent and subject to the mortgage. *Strobe v. Downer*, 13 Wis., 13–16.

*O. S. & F. H. Head*, for respondents :

1. The order for the plaintiff to amend his proceedings so as to bring before the court the heirs of Betsey Bennett, is a proper order under our present practice even in a court of law, and always was in the court of chancery, for the purpose of determining the entire controversy between the parties in one action, and preventing a multiplicity of suits. R. S., ch. 122, sec. 22 ; 3 Duer, 663 ; 3 Abb., 205, 246; 17 How. Pr. R., 571. 2. It is no hardship upon the plaintiff. The expenses of perfecting *Howland's* title are to be paid him, and his money is drawing more interest in the mean time than it would draw after judgment. 3. It is even more for the benefit of the plaintiff than of *Howland* to have the title to the mortgaged premises fixed

and quieted in him. 4. It was the *duty* of the court to bring these parties into court, if it was satisfied that they had an interest in the subject matter of the action; and whether the court erred in being so satisfied, cannot now be passed upon in this court. Laws of 1864, ch. 168; 5 Wis., 270; 13 id., 339.

DIXON, C. J. The facts stated in the complaint and affidavit of the plaintiff, and in the affidavit of Mr. Pettit, show that the defendant is estopped from setting up, as against the plaintiff, that there was a defect of title or failure of consideration for the note and mortgage, or that his interest in the mortgaged premises is an insufficient security for the debt. The affidavits which were made and read in resistance of the motion, are not controverted or attempted to be by the defendant. The facts stated in them must be taken to be true, as alleged; and, if so, the defendant has no ground for the motion. The plaintiff is entitled to proceed with his foreclosure, and, if the debt is not paid, to sell the premises; and the purchaser may perfect the title afterwards should it prove to be defective. If the defendant, upon discovering the alleged defect in his title, had immediately commenced his action to correct the mistake, and had shown that he was prosecuting it with all due diligence to a judgment, the court might, perhaps, in its discretion, have stayed proceedings in this suit until the title was perfected. But as it is, we think no reason is shown for arresting the proceedings of the plaintiff, or compelling him to litigate and settle the question of the defendant's title, before he shall be permitted to foreclose and sell.

*By the Court.*—Order reversed.